Teodora Costa Beltrán et al., Plaintiffs and Appellants, v. Julián Piazza Canosi et al., Defendants and Appellees.

No. 6579. Argued April 3, 1936.—Decided June 9, 1937.

668

*R. Muñoz Ramos* for appellant. *Gustavo Rodríguez Acevedo* for appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

José Costa Bianchi by a will designated as his heirs his acknowledged natural children Julia, José, Antonia, Teodora,

Domingo, and Inocencio Costa Beltrán. Upon the death of the testator, Teodora, Domingo, and Inocencio, who were then minors remained under the *patria potestas* and tutorship of their natural mother Lorenza Beltrán.

Among the properties left by the deceased there was one of 109 acres (*cuerdas*), set apart to the growing of coffee. In the deed of partition said property was valued at $5,450, and it was allotted to the six heirs in the following undivided shares:

To José an undivided interest of $650, and to each of the other five an undivided interest of $950 in the value fixed on the realty.

On November 4, 1926, Lorenza Beltrán, as mother and guardian of her minor children Teodora, Domingo, and Inocencio, applied to the District Court of Ponce, for judicial authorization for her, together with the other two co-owners Julia and Antonio Beltrán, to borrow $2,500, to be secured by a mortgage on the property, of which amount $1,500 would belong to the infants, in order to purchase with that loan, and for the benefit of the three minor children, the undivided interest held by José Costa Beltrán in the property, for the sum of $2,000, and to use the remaining $500 to repair the damage done to the property by a hurricane. It was alleged in the petition that co-owner José Costa Beltrán did not wish to continue as joint owner of the property; that there was someone willing to pay $2,000 for his share; that it would be dangerous to take in as co-owner a stranger to the family; that the property was so small that it could not be divided without an exceedingly large depreciation; and that the property had been assessed, for tax purposes, at $8,500. At the hearing held on November 5, 1926, the petitioning mother testified that her son wanted to separate and sell his share in the estate to a Corsican named Salicetti, whom his other sons did not want as a co-owner; that the Banco Cafetero had assessed the property at $16,000; that José asked $2,000 for his share. Julia Costa Beltrán testified

to the same effect as her mother, adding that José's share was one-eighth of the property and that it was easily worth $2,000; and that they needed the loan "in order to buy my brother's share and $500 to repair the coffee plantation." The minors Teodora and Domingo testified giving their consent to the authorization of the loan. The district attorney intervened in the proceedings and gave his approval.

On November 10, 1926, the district court entered an order granting the requested authorization, and providing as follows:

"And to purchase for $2,000, with the proceeds of this loan, and for the benefit of the said minors and co-owners, the undivided interest that José Costa Beltrán has in the same rural property, and to apply the remaining $500 to repair the damage caused by last year's hurricane to the coffee plantation in said property."

By a deed dated November 11, 1926, Lorenza Beltrán, the mother of the minor children, acting in pursuance of the judicial authority granted to her by the district court, together with Julia and Antonio Costa Beltrán constituted a mortgage over the property in question in favor of Dr. Francisco R. de Jesús, to secure the payment of his loan for $2,500. In said deed it was expressly stated that each of the five brothers and sisters who were parties thereto was the owner of the undivided interest that had been allotted to him or her in the partition proceeds of the estate, and it was added:

"And the other undivided interest, amounting to $650 of the total value of the property, was acquired by Julia Costa Beltrán by purchase from the other co-owner, José Costa Beltrán by deed number 106, executed before the subscribing notary on October 23, 1926. These purchases have not been yet recorded in the Registry of Property of the District, but this requisite will be complied with."

In the second paragraph of said mortgage deed it was stated that a certified copy of the order of the court authorizing the loan and the mortgage on behalf of the minors, was attached at the end of the deed in order to insert it in the copy of the instrument. It appears from the record that this

was done in the copy issued to the mortgage creditor, De Jesús, which was recorded on December 29, 1926.

Subsequent to the constitution of the said mortgage, Julia Costa y Beltrán, who on October 23, 1926, had purchased her brother's undivided interest, sold one-fifth thereof to each of her three minor brothers, represented by their mother Lorenza Beltrán, and to her other brother Antonio, by a deed dated December 14, 1926. The vendor stated that she had acquired that undivided interest for herself and for her four brothers and sisters. The price paid by each of the purchasers was $400, that is, the same amount for which Julia had purchased it from José.

On the following day, December 15, 1926, Antonio Costa Beltrán, his three younger brothers and sister, represented by their mother Lorenza Beltrán, and Julia Costa Beltrán, executed a deed for the purpose of dissolving the community existing between them, as they thought that the property would depreciate too much if divided in specie among the co-owners. By the terms of that deed, Lorenza Beltrán awarded to Julia Costa Beltrán the undivided interests held by said Teodora, Domingo, and Inocencio in the property, for the price of $1,080, payable to each minor. Said price covered the value of the interest awarded each infant, that is, $950, plus one-fifth of the undivided interest, amounting to $650, purchased from José, or $130, which makes a total of $1,080 for each condominium. Antonio sold his share to Julia under similar conditions. It was stated in the deed that the partition was made without an authorization from the district court because the same was deemed to be unnecessary, according to the holding of this Supreme Court in the case of *Martínez et al.* v. *The Registrar of Caguas,* 23 P.R.R. 330.

The above award was made subject to the mortgage held by defendant De Jesús.

Julia Costa Beltrán, as owner of the entire property, on July 7, 1927, mortgaged the same to Francisco R. de Jesús to secure a loan for $1,700, maturing on July 7, 1929.

On February 21, 1929, the defendant Francisco R. de Jesús brought summary mortgage foreclosure proceeding to recover on the two mortgages executed in his favor, and directed the complaint against the heirs of Julia Costa Beltrán, who were her natural mother, Lorenza Beltrán, and her husband, Luciano S. Caraballo. After following the procedure provided by law, the property was awarded to Francisco R. de Jesús and recorded in his name. On November 20, 1929, De Jesús sold it to the other defendant, Julián Piazza Canosi.

In the complaint filed by the minors, prayer was made to annul the mortgages, the conveyances, the proceedings, and the acts above stated; to have defendant Piazza adjudged to return to the plaintiffs their undivided interests in the property and to deliver to them the possession of the realty; to have both defendants adjudged to render an account and to pay to the plaintiffs the rents and profits produced by the property during the time it was in their possession; and to have the defendants taxed with costs, disbursements, and attorney's fees.

The prayer for annulment of the first mortgage on the undivided interests of the three minors was based on the claim that the judicial authorization was granted for the purchase of the undivided interest of José Costa Beltrán, and not for the purchase made from Julia Costa Beltrán; that from the terms of the mortgage deed, from the copy of the judicial authorization that was attached thereto, and from the registry of property, the defendant De Jesús had notice of the fact that the contract of loan and mortgage that he entered into with the mother of the three minors had not been authorized by the court, and that the transaction approved by the court could not be carried out because on the date that

the mortgage was executed José was no longer the owner of an interest in the realty, as he had already sold it to Julia.

The nullity of the conveyance of the undivided interests of the minors to their sister Julia was also prayed for, on the alleged ground that the said conveyance was made without judicial authorization, and consequently, the nullity of the mortgage executed by Julia in favor of the defendant De Jesús was also requested.

The alleged nullity of the summary foreclosure proceeding was based on the nullity of the foreclosed credits and on the additional allegation that the sale of the property was advertised in a local newspaper only on the 5th, 12th, 19th, and 23d of April, 1929, which facts appear in the record of the judicial sale.

As a ground for the nullity of the conveyance made by De Jesús to Piazza, it was alleged that the latter had notice from the registry of the fact that his vendor did not have a valid legal title.

The defenses set up by the defendant De Jesús can be summarized as follows:

1. That the judicial authorization for the loan of $2,500 was granted *on the ground that the property could not be divided in species without it suffering a great depreciation, because of its small size.*

2. That for the validity of the deed of dissolution of the community no judicial authorization was required, in accordance with the decision in *Martínez et al.* v. *The Registrar of Caguas,* 23 P.R.R. 330; and that the grounds on which the co-owners relied to make the partition, as to the interests of the minors, without judicial authorization were set forth in the record made of the deed in favor of Julia Costa Beltrán.

3. That the defendant De Jesús has not received any rents or profits because the property has produced none, inasmuch as it was totally ruined by the San Felipe hurricane.

4. That the sum of $2,500 loaned by him to the mother of the minors was applied by her to the purposes authorized by the court, and that in any event the minors did acquire the interest held by

their brother José, each one paying his or her proportionate share of the $2,500 loan.

5. That at the time the second mortgage for $1,700 was executed, Julia Costa Beltrán was the owner of the entire property, as she had acquired it by virtue of the deed of partition; that said deed was valid even though it lacked judicial authorization; that the defendant De Jesús did not participate in said deed, and that he is a third person who acquired his mortgage title in good faith, relying on the entries in the registry.

6. That the second mortgage was canceled in fact and in law, in accordance with the provisions of section 125 of the Mortgage Law and subdivision 3, section 132 of the Mortgage Law Regulations, as the proceeds of the auction sale did not cover the amount of the first mortgage.

The defendant De Jesús in his cross complaint prayed that in case the nullities sought by the plaintiffs should be decreed, that they be adjudged to return to De Jesús the amounts by which said plaintiffs benefited themselves, to wit:

1. One-half of the principal of the first mortgage for $2,500, and of the interest thereon, expenses, and attorney's fees, or the total sum of $2,197.50.

2. One-half of the principal amount, interest thereon, and additional credit pertaining to the second mortgage, or the total sum of $1,496.00.

It was further prayed that the judgment for said sums should have a preferred claim on three-fifths of the property, or that the payment of said sums be a condition precedent to the return of said undivided interests to the plaintiffs.

Defendant Julián Piazza Canosi denied for lack of information and belief the essential facts of the complaint; and as a special defense he set up his status as a third person, because it did not appear from the registry whether or not judicial authorization had been granted to the minors to dissolve the cotenancy, and because the marshal's deed to De Jesús appeared validly recorded in the registry. In his cross complaint he requested that in case the court order should decree the annulments prayed for by the plaintiffs, the latter

be adjudged to return to the defendant Piazza three-fifths of the sum of $2,254.64 spent by him in improving the property and paying taxes thereon, said three-fifths amounting to $1,292.80; and that said sum be declared a preferred lien on the undivided interests of the plaintiffs, or that the payment thereof be imposed as a condition precedent to the return of the property.

After the demurrers to the cross complaint had been overruled, the defendants answered the cross complaints, and alleged, among other things, that "none of the minors profited by either the whole or any part of the aforesaid loan, which was, at the time it was contracted for, entirely unnecessary for the benefit of said minors and was not used for their benefit"; and that hence, they are not bound to return the amount of said loan; that the minors were in no way benefited by the conveyance of their undivided interests to Julia Costa Beltrán, executed by their mother without judicial authorization, as no price was paid therefor.

After the case was tried, the lower court rendered judgment dismissing the complaint and the cross complaints on the merits, without any special imposition as to costs. The plaintiffs appealed and assigned as an only error of the trial court its action in dismissing the complaint.

We have carefully examined the transcript of the evidence which contains 363 pages. From the evidence introduced by both parties which was mainly documentary, the facts that we have heretofore chronologically stated appear to have been proved.

The questions that we must decide are the following:

1st. Are the grounds urged in support of the nullity of the mortgage that was executed by the mother of the infants in favor of De Jesús, legally and equitably sufficient?

We are of the opinion that a sufficient ground to decree such nullity has not been shown. The fundamental purpose sought to be attained by the making of a loan was to protect

the minors from the danger of a sale by one of the co-owners, José, of his undivided interest to a person foreign to the family. To avoid that danger, the co-owner Julia purchased José's undivided share for $2,000, with the intention of keeping one-fifth for herself and transferring to her brothers and sister the remaining four-fifths for the same price paid by her to José. With the money advanced by the defendant De Jesús to the mother of the minors, she purchased from Julia, for the benefit of said minors, three-fifths of the undivided interest which the co-owner José had threatened to sell to a stranger, at the price of $400 for each minor. By the terms of the mortgage contract, the three infant co-owners bound themselves to repay $1,500 of the $2,500 loaned, of which $2,000 were to be used in purchasing the undivided share owned by José, and $500 in improving the property. The other co-owners, Julia and Antonio, also encumbered their undivided share in an equal proportion. In other words, each of the five co-owners agreed to repay $500 of the total sum of $2,500. And each of them obtained in return for their obligation amounting to $500, one-fifth of the undivided interest that belonged to José, which was assessed at $400, plus $100 worth of improvements on the property. It is evident that the fundamental purpose of the judicial authorization—the acquisition of José's undivided interest for the benefit of the other five co-owners—was fulfilled. From the facts proved it does not appear that there was an intention on the part of the mortgage creditor to defraud the minors. The rights and interest of the minors have not been in the least injured by the loan transacted in the manner in which this one was carried out. On the contrary, each one of them increased his share of the total value of the property — assessed by all the parties at $16,000 — in an amount equal to that of the obligation contracted by each in virtue of the mortgage. The fact that Julia, rather than José directly, conveyed to the minors the undivided share

that the court authorized them to purchase, can in no way affect the good faith with which the mortgage creditor evidently acted. Since the legal purpose of the transaction was attained, a variance existing in the means used to effect it, in the absence of fraud or confabulation, chargeable to the creditor, is in our opinion insufficient to serve as basis for a declaration of nullity of the first mortgage. The trial court did not err in refusing the prayer seeking such nullity.

2d. Are there vices or defects in the deed of sale of the undivided interests of the minors, executed by the mother in favor of the co-owner Julia, which would be legally sufficient to decree their nullity to the prejudice of the defendants De Jesús and Piazza?

The plaintiffs-appellants maintain that said deed is null and void because it was not executed pursuant to a judicial authorization, and that such authorization was indispensable inasmuch as three of the co-owners were minors.

In our Civil Code (1911 ed.) we find the following provisions:

"Sec. 413. The rules relating to the division of inheritances shall apply to the division amongst part-owners.

"Sec. 1027. If the minors should be subject to the parental authority, and are represented in the division by the father or by the mother, in a proper case, neither judicial intervention nor approval shall be required.

"Sec. 1029. If a thing should be indivisible or should become considerably impaired by being divided, it may be awarded to one of the heirs under condition of paying to the others the difference in cash.

"But it shall be sufficient if a single one of the heirs requests its sale at public auction, outside bidders being admitted in order that it may take place."

In the case of *Sánchez* v. *Registrar of Property*, 21 P.R.R. 453, and later in that of *Martínez et al.* v. *The Registrar of Caguas*, 23 P.R.R. 330, this Supreme Court upheld the validity of certain deeds that had been executed under the same conditions existing in the present case, that is, by

the mother with *patria potestas,* in the name of the minors, and without judicial intervention or approval; and it held that the judicial approval required by section 229 of the Civil Code, amended by Act No. 33 of March 9, 1911, in order to alienate property belonging to a minor is not applicable to a partition of common property in which infants are interested, because such partition should be governed by section 413 in connection with section 1027 of the said code, which provides that if the minors should be subject to parental authority and are represented by the father or by the mother, neither judicial intervention or approval shall be required.

It should be noted that in the case of *Martínez et al.* v. *The Registrar of Caguas, supra,* the following was stated: "Two minor heirs were represented in the instrument by their mother with *patria potestas,* she having no interest in the estate."

The case of *Martínez et al.* v. *The Registrar of Caguas, supra,* was decided by this court on January 11, 1916. The deed of partition of common property involved in the case at bar was executed on December 15, 1926, and recorded in the registry on January 18, 1927. In the record made of the whole property in the name of the grantee Julia Costa Beltrán, it was said:

"It is declared that the third clause of the deed reads as follows: This partition made in the manner above stated is based on the decision in the case of *Martínez et al.* v. *The Registrar of Caguas,* Puerto Rico Reports, Volume 23, p. 330."

The facts in *Martínez et al.* v. *The Registrar of Caguas,* were practically the same as those of the instant case, with the only difference that here we are dealing with a rural property whereas there an urban property was involved. In both cases the mother who represented the minors had no personal interest in the estate; and the whole of the property was transferred to one of the co-owners, and the remaining ones received in cash the amount of their respective

shares. The decision in *Martínez et al.* v. *The Registrar of Caguas, supra,* confirmed and followed the one rendered by this court in the case of *Sánchez* v. *Registrar of Property, supra,* and both decisions were in accord with the construction given by the commentators and the Spanish courts to the sections of the Spanish Civil Code equivalent to those of our code already cited. See: Scaevola, vol. 18, pp. 296 to 320; Manresa, vol. 7, pp. 651–661.

Prior to our decision in *Martínez et al.* v. *The Registrar of Caguas, supra,* on June 1, 1915, the Supreme Court of the United States had rendered its decision in the case of *Longpré* v. *Díaz,* 237 U. S. 512, 59 Law. Ed. 1080, affirming the judgment rendered in that case by the United States District Court for the District of Puerto Rico. In that case the mother of a minor and his attorney *ad litem* had entered into a private contract which was later embodied in a public deed, without first securing judicial authorization therefor. By that contract they conveyed the property of the minor to a creditor in satisfaction of certain debts. The contract, entitled "Partition of Inheritance," was approved by the district court after its execution. In spite of that approval *a posteriori,* the Supreme Court decreed its nullity, holding that:

"While it is obvious that the property left by the deceased and which passed to his heir, the minor, was bound for the debts of the deceased and subject to be disposed of under lawful proceedings to pay the same, we think it is indisputably apparent that there was an absolute want of authority on the part of the widow and guardian *ad litem* to give the property of the minor in payment of an alleged debt of the estate of the father. We say this because the so-called partition and the sale of the property by a mere private agreement were directly in the teeth of the requirements of the law concerning the administration and sale of a minor's property and therefore such mere private sale created no rights whatever conflicting with the title vested in the minor in virtue of his heirship." *Longpré* v. *Díaz,* 237 U. S. 512.

In deciding the case of *Martínez et al.* v. *The Registrar of Caguas, supra,* this Supreme Court did not take into account the decision of the Federal Supreme Court which we have just cited; but it did so, and adopted the doctrine of that decision as the one applicable to cases of this kind, in *Del Rosario et al.* v. *Rucabado et al.,* 23 P.R.R. 438, decided on January 28, 1916. In that case the property of the minors had been conveyed by the mother, without judicial authorization therefor, to the creditors of the deceased. The original decision upheld the validity of the conveyance, but on a motion for rehearing, the same was reconsidered and the court speaking through Mr. Justice Del Toro said:

"A perusal of the foregoing suffices to show that as to the fundamental question of the validity or invalidity of conveyances made directly to creditors in satisfaction of their claims in the partition of an estate in which minors are interested without first obtaining the authorization of the court generally required by law for the sale of property belonging to minors, the opinion of the Supreme Court of the United States is in conflict with the opinion delivered by the Supreme Court of Porto Rico a few days before. The Supreme Court of the United States, which has appellate jurisdiction over the Supreme Court of Porto Rico, held that such conveyances are null and void and its doctrine must prevail no matter what opinion all or some of the justices of this court may continue to hold."

■ Subsequently, in *Milán* v. *Registrar,* 41 P.R.R. 98, *Mercado* v. *Registrar,* 41 P.R.R. 521, and *Burset* v. *Registrar,* 49 P.R.R. 47, this court decided that where a property held in common is awarded to one of the co-owners, such a transaction is not a partition of the common property, but an alienation of the property which requires both judicial authorization and the public auction provided by section 388 of the Civil Code in order to make it binding where any of the co-owners is not of age.

■■ The sale of the undivided interest of the minors by their mother to the other co-owner, Julia, was made not only without judicial authorization and without compliance

with the requirement of a public sale, but to the prejudice of the estate of said minors. They were the owners of three-fifths of a property, the value of which had been fixed by the bank and the parties at $16,000; and the very grantee Julia admitted said valuation when she paid $2,000, for the undivided one-eighth interest owned by José in the property. The shares of the three minors had an aggregate value of $9,600 and were answerable for $1,500 of the amount of the first mortgage held by defendant De Jesús. By the terms of the grant in controversy, Julia also acquired the minors' interests for a price of $1,080 payable to each infant, and assumed the obligation of paying $1,500 to De Jesús. The minors were divested of property worth $9,600 for a price of $4,740, thus forcing upon them a loss which amounted to $4,860. It is in order to avoid transactions that are prejudicial to the interests of the minors, like the one effected in the present case, that the law and the jurisprudence in this jurisdiction require that the minors shall be protected by judicial intervention and by a sale to the highest bidder. When the $1,700 loan was made to Julia Costa Beltrán, the defendant De Jesús had notice from the registry of the fact that the title of the borrower was null and void as to the three-fifths that she had purchased from the minors, inasmuch as the legal requisites had not been complied with. His defense to the effect that he was a third person is not supported by the facts. When the so-called partition was made, the Supreme Court of the United States had already established the doctrine set forth in *Longpré* v. *Díaz, supra,* declaring the nullity of a partition of this character where the judicial authorization is lacking.

We must hold, therefore, that the sale of the undivided interests of the minors is null and void, and so is the mortgage of $1,700 executed by Julia Beltrán as to three-fifths of the property. The lower court erred in holding said acts valid and binding upon the infant plaintiffs.

■■ 3d. The nullity of the summary mortgage foreclosure proceeding whereby the defendant De Jesús sought to foreclose the two mortgage credits is a necessary consequence of the declaration of nullity regarding the $1,700 credit. The plaintiffs, who have been at all times the owners of three-fifths of the property, the sale by their mother being null and void, were not served with a demand for payment of the first mortgage that was being foreclosed together with the second one for $1,700, and were not bound by the judgment of foreclosure. We must, therefore, hold the foreclosure proceeding, the auction sale, and the award of the property to the defendant De Jesús to be null and void, and similarly as to the sale made by the latter to the defendant Piazza, who can not set up either his status as a third person, inasmuch as he purchased the property with notice from the registry of the nullity of his vendor's title.

■ 4th. The claim for $2,254.64 made by defendant Piazza in his cross complaint, for repairs and improvements made by him on the property and for taxes paid by him, is not supported by any evidence. The court in its opinion stated that the parties had stipulated that in case such cross complaint were sustained the evidence on those points would be introduced fifteen days after the said judgment should become final. Since the complaint and the cross complaint were dismissed on the merits, no such evidence was introduced. We are not, therefore, in a position to fix the amount of the claim. The only thing we can and do decide is that, since defendant Piazza is not a *bona fide* owner, he has a right to recover from the plaintiffs three-fifths of the expenses incurred by him in the preservation of the property and in the payment of the taxes on the realty, subject, of course, to the obligation of returning to the plaintiffs three-fifths of the rents and profits derived by him from the property during the time he was in possession thereof, and from the date on which the action of annulment was commenced.

For the foregoing reasons the judgment rendered by the District Court of Ponce on June 2, 1933, should be vacated, and another rendered instead containing the following pronouncements:

1. Upholding the validity and subsistence of the mortgage for $2,500 executed by the mother of the plaintiffs in favor of the defendant Francisco R. de Jesús; and the undivided interests of the plaintiffs, amounting to three-fifths of the property, must answer for $1,500 of the principal sum, with interest thereon at the stipulated rate of 12 per cent per annum, from November 11, 1926, until the final payment thereof, without costs.

2. Decreeing the nullity and nonexistence, as to the interests held by the plaintiffs, set forth in deed number 131, executed in the city of Ponce on November 15, 1926, before Notary Cipriano Olivieri, and ordering the cancelation of the record thereof made in the registry, at folio 181, volume 90 of Adjuntas, property number 1173, quintuple, 14th inscription.

3. Decreeing the nullity and nonexistence, as to the interests held by the plaintiffs, of the mortgage for $1,700 executed by Julia Costa Beltrán in favor of Francisco R. de Jesús by deed number 87, dated July 7, 1927; and ordering the cancelation, as to the interests of the plaintiffs, of the corresponding record made at folio 183, back, of volume 90 of Adjuntas, property number 1173, quintuple, 16th inscription.

4. Decreeing the nullity, as to the undivided interests of the plaintiffs, of the summary mortgage foreclosure proceeding, civil case No. 3586, prosecuted in the District Court of Ponce by Francisco de Jesús y Ruiz de Porras against the Heirs of Julia Costa Beltrán, for the foreclosure of the two mortgages; of the auction sale and award of the property to the mortgage creditor; and of the sale made by the latter to the defendant Julián Piazza Canosi; and there should be canceled, as to the interests of the plaintiffs, the record of said sale and award which appear in the registry respectively at folio 184, back, volume 90 of Adjuntas, property number 1173, quintuple, 17th inscription, and at folio 88, same volume and property, 18th inscription.

5. Dismissing the cross complaint of the defendant Francisco R. de Jesús, as to the first cause of action set forth therein, and adjudging the defendants Teodora, Domingo, and Inocencio Costa Beltrán to pay to the defendant Francisco R. de Jesús the sum of

$1,500, which is the principal amount of the mortgage encumbering the interests of said plaintiffs, with interest thereon at the rate of 12 per cent per annum, from November 11, 1926, until the date of final payment, without special imposition as to costs; and this part of the judgment can not be executed until the rights of the parties concerning the claims for improvements to the property and for rents and profits produced by the property and received by the defendants, shall have been finally determined.

6. Remanding the case to the district court with directions to proceed to take evidence on the cross complaint filed by the defendant Piazza, wherein he claims the amount of the expenses incurred by him in the preservation of the properties and in the payment of the taxes thereon; and to require the defendants and cross-complainants, De Jesús and Piazza, to render an account to the plaintiffs of any amount actually received or which might have been received by either of them as fruits and profits during the period that each was in possession of the realty; and after hearing the evidence that may be introduced by both parties, to render the judgment which, in its opinion, should be proper.

Mr. Justice Córdova Dávila was absent at the time of the signing of the judgment, but he sat at the hearing of the appeal and participated in the discussion in conference; and he has read this opinion in which he concurs.

Mr. Chief Justice Del Toro and Mr. Justice Hutchison dissented.

MR. JUSTICE HUTCHISON, dissenting.

Six children, three of whom were minors, acquired by inheritance a small coffee grove. On October 23, 1926, Julia Costa, one of the elder children, purchased from José Costa, the eldest, his undivided interest in the property. The consideration was $2,000. Twelve days later the widow, on behalf of her minor children, asked the district court to authorize the execution of a mortgage by the minor children for reasons of alleged necessity and in order to protect their interest in the land.

The reasons set forth in the petition were in substance: that the eldest son, José Costa, wished to dispose of his in-

terest in the property and was unwilling to continue as a cotenant; that he had received an offer of $2,000 from a stranger; that the intrusion of a stranger would be disastrous and that in order to avoid this impending disaster it was imperative that the mortgage should be executed to raise the money needed for the purchase from José Costa of his undivided interest. Julia Costa, as well as the mother, testified at the hearing to these and other details. From this testimony it appeared that a certain Corsican had offered José $2,000 for his undivided interest, that this Corsican had already exhibited an unfriendly disposition toward the other heirs and that if he should become a cotenant the inevitable result would be most unfavorable to the best interest of the minor children.

José Costa had married and established his own residence before the date of the conveyance to his sister Julia. At the time of the hearing, Julia was still living under the same roof with her mother. The mother was an illiterate woman. Whether or not she knew that Julia had already acquired José's undivided interest is immaterial. Either Julia or Julia and her mother not only concealed the truth, but deliberately misrepresented the facts and thereby perpetrated a fraud upon the court. Hence, the so-called judicial authorization was an absolute nullity and open to collateral attack. In any event, the district court did not authorize the execution of a mortgage by the minor children for the purpose of borrowing money with which to purchase from Julia the undivided interest which she had already acquired from José.

The so-called judicial authorization was dated November 10, 1926. On the next day the mortgage was executed. It stated that Julia had purchased from José his interest in the property October 23, 1926, by deed executed before the same notary who drew the mortgage. The mortgage referred to a certified copy of the judicial authorization as attached thereto. It explained that this certified copy of the judicial

authorization was attached to the mortgage in order that it might be "inserted in the copy." It was included in the first copy of the mortgage issued to the mortgagee on the day of its execution. By this certified copy of the judicial authorization, the mortgagee was fully informed as to the object and purpose of such authorization and as to the supposed facts upon which it was based. By the recital already mentioned, the mortgagee was fully informed that the situation which the judicial authorization was intended to meet had ceased to exist before the petition was filed. He knew that the purpose for which the execution of a mortgage had been authorized could not be accomplished because it had already been accomplished before the judicial authorization was requested. He knew that the district court had not authorized the execution of a mortgage for any other purpose. The cases which hold that a mortgagee is not bound to see that the proceeds of the mortgage are properly employed have no application to the facts in the instant case. The mortgage was unauthorized and void as far as the undivided interest of the minor children was concerned.

On December 14, 1926, Julia Costa conveyed to each of the minor children an undivided interest in the undivided interest which she had purchased from José. In this deed of conveyance she stated that she had acted on behalf of herself and the other cotenants in the acquisition of José's interest.

If, as appellees now suggest, the object of the purchase from José was to prevent a sale by José to a stranger, pending the proceeding for a judicial authorization, the most natural and effective way of insuring that result would have been to record the deed at once. See section 1362 of the Civil Code (1930 ed.). It was not recorded until after the judicial authorization had been obtained and the mortgage executed.

At the trial of the instant case, the notary who drew both the deed of conveyance by José to Julia and the mortgage testified as a witness for defendants concerning other matters but made no mention of any trust relationship.

The recital as to Julia's fiduciary capacity in her acquisition of José's interest came too late. There was no mention of any such capacity in the conveyance by José to Julia. The recital is in direct conflict with Julia's testimony as to the necessity of purchasing José's undivided interest in order to prevent him from selling the same to a stranger who had offered him $2,000. It is inconsistent with the fact that on the day following the judicial authorization, Julia had represented herself to be the owner of the undivided interest which she had acquired from José and as such owner had mortgaged the same together with her original undivided interest in the land.

In addition to all this, Julia, on December 15, within twenty-four hours after her conveyance to the minors, purcharsed from them not only the undivided interest which she had transferred to them on the previous day, but all of their interest in the property. As pointed out in the majority opinion, she paid for this entire interest less than one half of its fair and reasonable value. Aside from the fact that these two conveyances were executed before different notaries, the transaction as a whole would have been no different if it had been embodied in a single instrument unless we are to assume that the agreement as to a sale by the minors of their entire interest in the property, for less than one half of its actual value, was reached after the execution of the first deed and before the execution of the second. We find no satisfactory basis for such a hypothesis.

The only avowed purpose of the petition for a judicial authorization was the purchase from José of his undivided interest which he was about to sell to an unfriendly stranger. The fact that Julia had already acquired José's interest was

carefully concealed from the court. If the truth had been told in the petition or by witnesses at the hearing it is not probable that the court would have authorized a mortgage for the purpose of enabling the minors to purchase from Julia a proportionate share in the undivided interest acquired by her from José on the understanding that the mother of the minors would thereupon convey to Julia, without judicial authorization and for an inadequate consideration, the entire interest of the minors in the mortgaged property. In any event, there was no pretense of any such purpose at the time of the proceeding nor at the time of executing the mortgage. A judicial authorization was necessary, however, if a mortgage was to be executed on the whole property for any purpose.

If we eliminate the theory of a judicial authorization to enable the minors to purchase from Julia, which for reasons already stated seems untenable, the alternative conclusion is that the judicial authorization was obtained for the undisclosed purpose of enabling Julia to become the owner of the entire property upon the terms already indicated.

If Julia had in fact purchased José's undivided interest for herself and the other cotenants, including the minors, if she had no ulterior motive, if she had nothing to hide from the court, if she did not intend at that time to obtain from the mother of the minors their entire interest in the property without judicial authorization and for an inadequate consideration, then there was no need of camouflage, no need of false averments and perjured testimony, no need of a judicial authorization for the purchase from José of his undivided interest in order to prevent him from selling the same to a stranger. In the absence of any explanation as to the motive for obtaining an authorization under false pretenses, the mere formality of a conveyance to the minors by Julia of a three-fifths interest in the undivided interest previously purchased by Julia from José (as a preliminary to

the immediate reconveyance of such three-fifths interest to Julia by the mother of the minors for less than one-half of the purchase price paid by them) stands out as the final step in a striking misuse of the procedure prescribed by section 159 of the Civil Code (1930 ed.).

Whatever the real motive for the procuring of a judicial authorization may have been, the conveyance by Julia to the minor children did not achieve the main object of that authorization as set forth in the authorization itself. It was in fact a transparent device intended to give some color of plausibility to the theory that the primary purpose of the judicial authorization had been accomplished. The truth was, and is, as we have already shown, that the avowed object of the judicial authorization had been accomplished twelve days before the filing of the petition for such authorization.

The fact that the mortgagee was not an active participant in the fraud is not a decisive factor in the case. It is enough to say that he must be deemed to have known that the first mortgage was an absolute nullity for want of a judicial authorization.

The entire proceeds of that mortgage went directly or indirectly to Julia Costa. The contrary view can be sustained only by taking into consideration the form and ignoring the substance of the transaction as a whole.

Under the judgment of this court the minors (unless they can pay $1,500 with interest thereon at 12 per cent per annum from November 1926) will lose their three-fifths interest in the mortgaged property notwithstanding the absolute nullity of the mortgage and notwithstanding the mortgagee's knowledge of such nullity.

The writer therefore dissents from the first and fifth pronouncements of the judgment rendered by this court and from so much of the majority opinion as tends to support those pronouncements. He is authorized to state that Mr. Chief Justice Del Toro concurs in this dissenting opinion.